United States District Court
Middle District of Florida
Orlando Division

JANEL M. HERNANDEZ,

      *Plaintiff,*

v.                                  **NO. 6:22-cv-2313-RBD-PDB**

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant.*

---

## Report and Recommendation

Proceeding under 42 U.S.C. § 405(g), Janel Hernandez sues the Acting Commissioner of Social Security for review of a final administrative decision denying her application for disability insurance benefits. Doc. 1. The Acting Commissioner has filed a 1,557-page administrative record, Doc. 18; Hernandez has filed a brief arguing for remand, Doc. 19; and the Acting Commissioner has filed a brief arguing for affirmance, Doc. 20. Hernandez makes one argument. *See generally* Doc. 19. She argues "the Appeals Council failed to apply the correct legal standards to [her] new and material evidence." Doc. 19 at 9.

## Law

To obtain benefits, a claimant must demonstrate she is disabled. 20 C.F.R. § 404.1512(a). A claimant is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration (SSA) uses a five-step sequential process to decide if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). At step one, the SSA asks whether the claimant is engaged in "substantial gainful activity."[1] *Id.* § 404.1520(a)(4)(i). At step two, the SSA asks whether the claimant has a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). At step three, the SSA asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of any impairment in the Listing of Impairments.[2] *Id.* § 404.1520(a)(4)(iii). At step four, the SSA asks whether the claimant can perform any of her "past relevant work"[3] considering her "residual functional capacity" (RFC).[4] *Id.* § 404.1520(a)(4)(iv). At step five, the SSA asks whether the claimant can adjust to other work considering her RFC, age, education, and

---

[1]"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id.* § 404.1572(a). "Gainful work activity" is work done "for pay or profit." *Id.* § 404.1572(b).

[2]In the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, "for each of the major body systems," the SSA describes "impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimant has an impairment in the Listing of Impairments (or equaling an impairment in the Listing of Impairments), she is conclusively presumed disabled. *Bowen v. City of New York*, 476 U.S 467, 471 (1986).

[3]"Past relevant work is work [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough … to learn to do it." 20 C.F.R. § 404.1560(b)(1).

[4]A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

work experience. *Id.* § 404.1520(a)(4)(v). If the SSA finds disability or no disability at a step, the SSA will "not go on to the next step." *Id.* § 404.1520(a)(4).

To receive benefits or judicial review of a denial of benefits, a claimant ordinarily must follow an administrative review process. *Id.* § 404.900. A state agency acting under the Commissioner's authority usually makes an initial determination. *Id.* §§ 404.900, 404.1503(a) & (b). If dissatisfied with the initial determination, the claimant may ask for reconsideration. *Id.* § 404.907. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an Administrative Law Judge (ALJ). *Id.* §§ 404.929, 404.930. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. *Id.* § 404.967. If the Appeals Council denies review, the claimant may sue in federal district court for review of the ALJ's decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

The SSA conducts "the administrative review process in an informal, non-adversarial manner" and "will consider at each step of the review process any information [the claimant] present[s], 20 C.F.R. § 404.900(b), including at the Appeals Council step, *id.* § 404.976(b). During this process, evidence in the form of an opinion of a treating physician is entitled to neither deference nor specific evidentiary weight. *Id.* § 404.1520c(a).

Generally, a claimant must inform the SSA about, or submit evidence to the SSA, no later than five business days before the hearing before the ALJ. *Id.* § 404.935(a). When the Appeals Council acts on a request for review, the Appeals Council usually considers only the evidence that was before the ALJ. *Id.* § 404.970. But under a regulation that became effective on January 17, 2017, and requires compliance as of May 1, 2017, *see Ensuring Program*

*Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987, 90987 (Dec. 16, 2016), the Appeals Council must review a case at a claimant's request if the Appeals Council "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable **probability** that the additional evidence would change the outcome of the decision" and the claimant demonstrates good cause for not submitting the evidence earlier. 20 C.F.R. § 404.970(a)(5), (b) (2020) (emphasis added).

The previous regulation did not use the word "probability." *See id.* § 404.970(b) (2016) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and **material** evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." (emphasis added)).

Interpreting the previous regulation, the Eleventh Circuit held evidence is "**material**" if there is a reasonable "**possibility**" the evidence would change the outcome. *See Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (emphasis added); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015) (emphasis added); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (emphasis added); *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001) (emphasis added); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (emphasis added); *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988) (emphasis added); *Hyde v.*

*Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (emphasis added); *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987) (emphasis added); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986) (emphasis added); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986) (emphasis added); *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 n.3 (11th Cir. 2021) (explaining the change to the identical regulation for supplemental security income, 20 C.F.R. § 416.1470(a)(5)).

When denying a request for review, the Appeals Council need not explain its rationale. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 783 (11th Cir. 2014); *accord Medders v. Soc. Sec. Admin., Comm'r*, No. 21-11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) ("[N]o further explanation is necessary where the claimant presents 'additional evidence' related to a medical condition that was already considered by the ALJ."), *cert. denied*, 143 S. Ct. 563 (2023). The Eleventh Circuit has found sufficient an Appeals Council explanation that the additional evidence failed to establish a "reasonable probability that it would change the outcome of the decision." *Weddington v. Soc. Sec. Admin., Comm'r*, No. 21-14096, 2022 WL 2915694, at *2 (11th Cir. July 25, 2022) (internal quotation marks omitted).

## Administrative Record

Hernandez was born in May 1969. Tr. 278. She has three college degrees, at least seven specialized teaching certificates, and was halfway through earning a master's degree when, according to her, she discontinued studies for "health reasons." Tr. 100–01, 346. She applied for benefits in October 2020,

alleging disability beginning in June 2020. Tr. 162, 278–79. She is insured through December 2024.[5] Tr. 13.

After no-disability determinations at the initial and reconsideration levels, Tr. 133–51, 153–61, Hernandez requested a hearing before an ALJ, Tr. 183–84, and the ALJ conducted a hearing, Tr. 94–132. A lawyer represented Hernandez. Tr. 94. Hernandez and a vocational expert testified. Tr. 94–132. The ALJ asked Hernandez's lawyer, "Are there any treating restrictions in the file?" Tr. 130–31. The lawyer answered no. Tr. 131. The ALJ asked the vocational expert, "What are the customary employee tolerances for an employee being absent from the [workplace] on a monthly basis, on an unscheduled basis?" Tr. 131. The vocational expert answered, "An employer will allow an individual to miss one day per month. Anything above this would eliminate all jobs in the national economy." Tr. 131. The ALJ asked the vocational expert, "What are the customary tolerances for an employee being off task during the [workday]?" Tr. 131. The vocational expert answered, "An employer will allow an individual to be off task at the very max 10 percent of an eight[-]hour [workday]. Anything in addition would eliminate all jobs in the national economy." Tr. 131.

After the hearing, the ALJ issued a decision, stopping at step four of the five-step sequential process. Tr. 11–24. The period under review is June 23, 2020 (the alleged onset date) to May 25, 2022 (the date of the ALJ's decision). *See* Tr. 19, 162.

---

[5]For disability insurance benefits, a claimant must show disability by the date last insured. 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131.

At step one, the ALJ found Hernandez had engaged in "substantial gainful activity" during the third and fourth quarters of 2021. Tr. 13. The ALJ further found Hernandez had not engaged in substantial gainful activity during a continuous twelve-month period. Tr. 13. The ALJ explained that his findings pertain to the periods during which Hernandez had not engaged in substantial gainful activity. Tr. 13.

At step two, the ALJ found Hernandez has severe impairments of degenerative disc disease of the cervical and lumbar spines, migraines, osteopenia (i.e., weaker than normal bones), and fibromyalgia. Tr. 14. The ALJ further found Hernandez has non-severe impairments of depressive disorder and anxiety disorder. Tr. 14. The ALJ observed that Hernandez takes medication for depression and anxiety "with good results." Tr. 14. The ALJ observed that mental status findings showed Hernandez "was pleasant, cooperative, alert, oriented, and well dressed and groomed." Tr. 14. The ALJ observed that medical records indicated Hernandez "had mildly constricted affect, normal speech, appropriate eye contact, no hallucinations, clear thought processes, appropriate answers, and intact insight and judgment." Tr. 14. The ALJ observed that Hernandez had participated in "individual therapy in October and November 2020 to learn healthy coping skills and problem[-]solving strategies for situation stressors." Tr. 14.

As part of his finding that Hernandez's mental disorders are non-severe, the ALJ "considered the [four] broad functional areas of mental functioning."[6]

---

[6]In evaluating the severity of mental impairments, the SSA rates the degree of a claimant's functioning in four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). An ALJ's "decision must include a specific finding as to the degree of limitation in each of the [four] functional areas[.]" *Id.* § 404.1520a(e)(4).

Tr. 14. The ALJ found Hernandez has only a mild limitation in each area, including because Hernandez had worked for approximately three months in a skilled job after the alleged onset date; she can "attend to activities of daily living independently, including shopping, cooking, cleaning, driving, etc."; and no deficits were mentioned in the record or no evidence supported greater limitations. Tr. 14–15. For the area of "understanding, remembering, or applying information," the ALJ added that Hernandez had testified about "her medical and employment histories without issue." Tr. 14. For the area of "interacting with others," the ALJ added that Hernandez could "interact with medical personnel and students/staff at the school where she worked." Tr. 14. For the area of "concentrating, persisting or maintaining pace," the ALJ added that "[m]ild limitations account[] for [Hernandez's] pain complaints." Tr. 14. For the area of "adapting or managing oneself," the ALJ added nothing further. Tr. 15.

At step three, the ALJ found no impairment or combination of impairments meeting or medically equaling the severity of anything in the Listing of Impairments. Tr. 15. The ALJ specifically considered listings 1.00 (musculoskeletal), 2.00 (special senses and speech), 3.00 (respiratory disorders), 4.00 (cardiovascular system), 5.00 (digestive system), 6.00 (genitourinary disorders), 7.00 (hematological disorders), 8.00 (skin disorders), 9.00 (endocrine disorders), 10.00 (congenital disorders that affect multiple body systems), 11.00 (neurological disorders), 12.00 (mental disorders), 13.00 (cancer - malignant and neoplastic diseases), and 14.00 (immune system disorders). Tr. 15. The ALJ explained:

> The revised musculoskeletal system listings have been considered and are not met or equaled, as [Hernandez] has no nerve root compromise and/or muscle weakness, sensory changes, decreased sensation/reflexes,

or sensory nerve deficit as required by listings 1.15 and 1.16; has had no surgery on a major weight bearing joint as required by listing 1.17; has had no anatomical abnormality of any joint as required by listing 1.18; has had no pathologic fractures as required by listing 1.19, amputation as required by listing 1.20, or non-healing fracture as required by listings 1.22 and 1.23; and has no soft tissue injury or abnormality under continuing surgical management as required by listing 1.21.

Tr. 15.

The ALJ summarized Social Security Ruling (SSR) 12-2p (a policy interpretation ruling on evaluating fibromyalgia) and explained he included fibromyalgia as a severe impairment because Hernandez was diagnosed with fibromyalgia and "has ongoing tenderness." Tr. 15–16.

The ALJ found Hernandez has the RFC to perform "medium work"[7] with exceptions; specifically, Hernandez can "occasionally climb ladders, balance, stoop, kneel, crouch, and crawl and can frequently climb stairs." Tr. 16.

The ALJ summarized Hernandez's testimony and other statements:

[Hernandez] is alleging disability since June 2020. However, she returned to work from August through November 2021 as a special education teacher. [She] alleges she is no longer able to work due to her illnesses. [She] reported she has chronic migraines, environmental allergies, reactive airway disease triggered by chemical vapors and dust, paranasal inflammatory disease with chronic sinus and bronchial infections, nausea and vomiting, the need for unpredictable bathroom breaks, depression, anxiety, double vision in the morning, difficulty seeing, dizziness, inflammatory conditions, neuropathy, hyperextend ability of her joints, sinus tachycardia, swelling in her lower extremities, orthostatic intolerance, [fibromyalgia], joint and back pain, and uncontrolled asthma. Her treatment consists of yoga, stretching, medications, and use of a TENS unit. [She] testified that her ability to perform household chores has been reduced over the last two years. She is able to cook on good days (2–3 days per week) and eats frozen foods

_____

[7]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

on the days she is not able to cook. She is able to drive but has difficulty turning her neck and shifting her eyes from side to side. She is able to shop for groceries in and outside farmers market[s] and may have reactions to irritants in the grocery store. She reported that her social life has been diminished to close friends, support groups, her prayer group, and family. She is able to go for short walks. [She] testified she is able to lift and carry 16 pounds, sit 15 to 20 minutes, stand 30 to 40 minutes, and walk 20 to 30 minutes at a slow pace. She is able to climb a flight of stairs but has difficulty reaching overhead and using a hammer due to pain. She is able to squat but has difficulty getting up.

Tr. 17.

The ALJ found Hernandez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 17. The ALJ explained that Hernandez's "statements about the intensity, persistence, and limiting effects of ... her symptoms" are "inconsistent because they are not supported by the evidence[.]" Tr. 17.

The ALJ summarized the medical evidence, including laboratory and examination findings:

[Hernandez] has hypothyroidism, which is stable with medication. An ultrasound of her thyroid was normal. Records note a history of pituitary adenoma but no ongoing treatment. Despite her complaints of dizziness, all testing, imaging, and workups were unremarkable. She takes supplements for low ferritin and Vitamin D. She takes medication for symptoms of diarrhea and bloating related to various diagnoses, including small bowel bacterial overgrowth syndrome, gastroparesis, and irritable bowel syndrome. These conditions and symptoms are stable with treatment. Laboratory and examination findings are unremarkable.

She reported hair loss, and alopecia was diagnosed. She had a benign follicular cyst removed from her scalp. [She] takes medication for allergic conjunctivitis and dry eye syndrome with reported improvement

10

of her symptoms. Hyper IgE was diagnosed in 2020, but a subsequent workup at [the] Mayo [Clinic] revealed no clinical evidence of this syndrome. A cardiac workup was negative.

[Hernandez] takes medication for eosinophilic asthma and has inflammatory sinus disease. Records note this is controlled with medication, though some examinations show mucosal inflammation and wheezing. She declined any surgical intervention and reported a history of mold exposure caused her symptoms. Pulmonary function testing revealed normal spirometry. Imaging of her chest was normal. An MRI of her head was negative and revealed improvement of her paranasal sinus disease from earlier imaging.

The diagnostic and clinical findings discussed above do not support a finding of any severe impairment related to these conditions and symptoms. However, the evidence shows [she] has osteopenia, migraines, [fibromyalgia], and [degenerative disc disease] of the cervical and lumbar spine. Records show tenderness of various joints and her spine with reported pain and hyperextendibility of joints. Records note tightness of her trapezius muscles. Imaging revealed cervical herniations and lumbar and cervical disc space narrowing and mild arthrosis. She reported pain, weakness, and fatigue. She received chiropractic treatment for a few months in 2021 and 4 visits with physical therapy. The consultative examiner noted normal neurological findings and normal gait, manipulative skills, and strength. She underwent evaluation at Mayo but was not a candidate for the [fibromyalgia] treatment program. These records note normal examination findings, though updated imaging revealed lumbar bulge and [degenerative disc disease] and mild tendinopathy of the right hip. She takes medication for migraines.

Tr. 17–18 (internal citations omitted).

The ALJ explained his consideration of administrative findings made at the initial and reconsideration levels. Tr. 18. He observed that state agency physicians who reviewed the record found Hernandez has mild limitations in the areas of mental functioning but the physician at the initial level found she was limited to light work, while the physician at the reconsideration level found she was limited to medium work. Tr. 18. The ALJ found the opinion at the reconsideration level more persuasive. Tr. 18. The ALJ explained:

> [The opinion at the reconsideration level] is supported by the objective evidence showing treatment for migraines, mild [degenerative disc disease], and [fibromyalgia] with complaints of pain and clinical findings of decreased range of motion, tenderness, and tightness. However, the examinations revealed no significant deficits of strength and a normal gait. Furthermore, [Hernandez] is able to perform routine activities of daily living, including driving, chores, shopping, walking, etc. While [Hernandez] has other impairments, as discussed above, examination findings have remained largely unremarkable, and her course of treatment has remained conservative. There is nothing in the evidence to suggest her non-severe impairments cause further limitation of her RFC. Based on the foregoing, the undersigned finds [Hernandez] has the above [RFC] assessment, which is supported by the evidence of record.

Tr. 18.

At step four, in accord with testimony from the vocational expert based on a hypothetical incorporating the RFC, Tr. 16, 130, the ALJ found Hernandez can perform her past relevant work as teacher support, a social studies teacher, a learning disabled teacher, and an art teacher. Tr. 19. The ALJ found Hernandez can perform those jobs both "light as generally performed" and "medium as actually performed." Tr. 19. The ALJ thus found Hernandez "has not been under a disability" through the date of the decision (May 25, 2022). Tr. 19.

Hernandez asked the Appeals Council to review the ALJ's decision. Tr. 28–29. Hernandez submitted additional evidence, including these responses of her rheumatologist, Michael Kohen, M.D., made on July 19, 2022, to questions posed by counsel:

| Janel M. Hernandez reports the following symptoms and limitations: | In your opinion, are these symptoms and limitations reasonably consistent with the medical signs and findings you have observed? |
|---|---|
| The inability to be on her feet (standing or walking) for four or more hours in an eight-hour workday five days a week on a reliable and consistent basis. | Yes ☑ No ☐ |
| The inability to sit upright in a chair for 4 hours or more hours in an eight-hour workday five days a week on a reliable and consistent basis. | Yes ☑ No ☐ |
| The need to lie down or recline most of the time. | Yes ☑ No ☐ |
| Pain, symptoms, and/or medication side effects which prevent her from concentrating at least twenty-five percent of the time. | Yes ☑ No ☐ |
| The need for frequent (hourly) unscheduled breaks of ten to fifteen minutes. | Yes ☑ No ☐ |
| Flare ups of her condition which would likely cause at least four or five absences per month from any job. | Yes ☑ No ☐ |
| Inability to perform even sedentary work activity eight hours per day five days per week on a reliable and sustained basis | Yes ☑ No ☐ |
| Based upon a review of the medical records, the patient history provided by Ms. Hernandez, and the level of severity of the impairments which were diagnosed upon examination, in your opinion, have the above impairments and limitations existed since June 2020? | Yes ☑ No ☐ |

Michael D. Kohen, M.D.        Date   7/19/22

Tr. 61.[8]

The Appeals Council denied Hernandez's request for review. Tr. 1–7. The Appeals Council began, "You submitted reasons that you disagree with the [ALJ's] decision. We considered the reasons and exhibited them …. We found … the reasons do not provide a basis for changing the [ALJ's] decision. … This

---

[8]Hernandez submitted five records: (1) answers to a questionnaire completed by her pain management specialist, Tse Lee, M.D.; (2) results of an MRI of her lumbar spine from August 2, 2021; (3) records from physical therapy; (4) responses of Dr. Kohen; and (5) pharmacy information sheets about prescription medications. Tr. 41–93. Here, Hernandez's challenge involves only Dr. Kohen's responses. Doc. 19 at 7 n.1.

means that the [ALJ]'s decision is the final decision of the Commissioner … in your case." Tr. 1.

Under the heading "Additional Evidence," the Appeals Council explained:

> You, through your representative, submitted an MRI of your lumbar spine dated August 2, 2021. This evidence is not new because it is a copy of Exhibit 8F, page 86. …
>
> Your [lawyer] also submitted a letter from August 9, 2022, with attached additional evidence. This included a medical source statement from Michael Kohen, M.D., dated July 19, 2022, and prescriptions from October 6, 2021, through July 15, 2022 (36 pages). [Your lawyer] also submitted a letter from September 13, 2022 with attached additional evidence, including a medical source statement from Tse Lee, M.D., dated September 9, 2022, and an initial physical therapy examination from June 1, 2022 (17 pages).
>
> This submission of evidence also contained an MRI from August 2, 2021, noted above. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> Lastly, the initial physical therapy examination discussed above is from June 1, 2022. The [ALJ] decided your case through May 25, 2022. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 25, 2022.

Tr. 2.

## Standard of Review

A court reviews "de novo the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (italics omitted). "However, [a court] review[s] the resulting decision only to determine whether it is supported by substantial evidence." *Id.*

14

"Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.*

"When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is … subject to judicial review[.]" *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoted authority omitted). "[W]hether evidence meets the … standard is a question of law subject to … *de novo* review." *Id.* at 1321. (internal quotation marks omitted). "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Id.* Different circumstances occur when "the Appeals Council consider[s] the additional evidence and then denie[s] review." *Id.* at 1321 n.5.

The de novo standard applies where the Appeals Council states it considered the reasons the claimant disagreed with the decision and the additional evidence but adds the additional evidence is not chronologically relevant. *Id.* at 1321; *accord Smith v. Soc. Sec. Admin., Comm'r*, No. 22-11407, 2023 WL 6938521, at *8 (11th Cir. Oct. 20, 2023) (rejecting the Acting Commissioner's position that the substantial-evidence standard applies where the Appeals Council begins, "You submitted reasons that you disagree with the [ALJ's] decision. We considered the reasons and exhibited them" but later adds the additional evidence is not chronologically relevant).

In a recent published opinion, the Eleventh Circuit applied the de novo standard after explaining, "The Appeals Council declined to assume jurisdiction and found that the new evidence would not change the outcome.

Specifically, it stated '[w]e did not consider or exhibit this evidence.'" *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1063 (11th Cir. 2021).

In a later unpublished decision, the Eleventh Circuit explained that the deferential standard applies where the Appeals Council denies review but in doing so considers—as opposed to refuses to consider—additional evidence. *Goble v. Soc. Sec. Admin., Comm'r,* No. 22-10842, 2023 WL 2823401, at *8 (11th Cir. Apr. 7, 2023); *see also Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315–16 (11th Cir. 2021) (explaining the Appeals Council denied the claimant's request for review under the stated rationale that no "reasonable probability" existed that the additional evidence would change the outcome and holding that because the additional evidence was cumulative of evidence the ALJ already considered, "substantial evidence supports the Appeals Council's determination that no 'reasonable probability' existed that the additional evidence would change the outcome").

Here, the Appeals Council described Dr. Kohen's responses, found no reasonable probability that they and other submitted evidence would change the outcome of the ALJ's decision, and declined to "exhibit" the responses. Tr. 2. Neither side specifically addresses whether, under these circumstances, the de novo standard or substantial evidence standard applies to Hernandez's challenge. *See* Doc. 19 (Hernandez's brief generally observing the de novo standard applies to conclusions of law and the substantial evidence standard applies to findings of fact and appearing to apply the de novo standard); Doc. 20 (Acting Commissioner's brief generally observing the substantial evidence standard applies to findings of fact and arguing substantial evidence supports the final decision). This Court need not decide which standard applies; affirmance is warranted even applying the non-deferential de novo standard.

## Arguments and Analysis

Hernandez argues that Dr. Kohen's responses are new, relate to the period on or before the date of the hearing decision, and are material; that there is a reasonable "**possibility**" the responses would have changed "the administrative outcome"; and that she demonstrated good cause for failing to submit Dr. Kohen's responses earlier. Doc. 19 at 5–9 (emphasis added). Hernandez points to the vocational expert's testimony and contends that had the ALJ posed a hypothetical with the limitations from Dr. Kohen's responses—including missing four or five days of work a month, lacking concentration twenty-five percent of the time, and needing to take frequent unscheduled breaks of ten to fifteen minutes—the vocational expert would have opined all jobs in the national economy would be eliminated. Doc 19 at 8. Hernandez emphasizes that Dr. Kohen has treated her since November 5, 2019, and saw her at least ten times since the June 2020 onset date. Doc. 19 at 8–9 (citing Tr. 820–41, 851–61, 1052–63, 1086–97, 1363–85, 1394–1405, 1410–21, 1424–35). Hernandez observes Dr. Kohen's examinations documented abnormal musculoskeletal findings. Doc. 19 at 9 (citing Tr. 1090, 1366, 1378, 1397, 1414–15, 1427).

The Acting Commissioner does not dispute that Dr. Kohen's responses are new, that the responses relate to the period on or before the day of the hearing decision, or that Hernandez demonstrated good cause in failing to submit the responses earlier. *See generally* Doc. 20. Rather, the Acting Commissioner disputes that the responses are material or that there is a reasonable **probability** they would change the outcome of the decision. *See generally id.* The Acting Commissioner observes that the new regulation requiring a reasonable **probability** applied when Hernandez requested

17

review and argues her reliance on a reasonable **possibility** standard is "misplaced and out-of-date." *Id.* at 6–7.

Contrary to Hernandez's argument, the Appeals Council applied the correct legal standard with respect to Dr. Kohen's responses. The applicable law required the Appeals Council to review Hernandez's case only if there "is a reasonable **probability** that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (2020) (emphasis added). The Appeals Council explained that Dr. Kohen's responses fail "show a reasonable **probability**" they would change the outcome of the decision. Tr. 2 (emphasis added). Hernandez shows no reversible error. The work-preclusive limitations conveyed by Dr. Kohen's responses—checkmarks in eight of eight boxes—are entitled to neither special deference nor specific evidentiary weight. *See* 20 C.F.R. § 404.1520c(a). No explanation accompanies the responses, including, for example, why Hernandez would need to lie down or recline most of the time despite. *See* Tr. 61. The responses are inconsistent with the prior administrative medical findings the ALJ found persuasive as supported by the medical record, including normal examination findings. *See* Tr. 17–18; 133–51, 153–61. Indeed, the responses are inconsistent with many normal findings from visits with Dr. Kohen himself. *See, e.g.,* Tr. 994, 996–97 (June 2020 examination; noting Hernandez "did not appear uncomfortable" and was "well-appearing"; noting normal findings regarding gait, heart, lungs, extremities, abdomen, head, ears, mouth, and neck; and noting normal findings regarding musculoskeletal, scleroderma, psoriasis, neurological, vasculitis, and psychiatric examinations); Tr. 822, 824–25 (September 2020 examination similar to June 2020 examination); Tr. 1055–58 (January 2021 examination similar to June 2020 examination except noting "pelvic girdle weakness"); Tr. 1090–93 (April 2021 examination similar to June 2020 examination except

noting "pelvic girdle weakness," "abnormal movement of all extremities spine," and tenderness in the DIP joints of the right and left hand); Tr. 1366–69 (July 2021 examination similar to April 2021 examination); Tr. 1378–81 (October 2021 examinations similar to April 2021 examination). The responses also are inconsistent with Hernandez's ability to work during the third and fourth quarters of 2021. *See* Tr. 13. As the Acting Commissioner contends, there is "no reasonable probability that the unsupported one-page form would change the outcome of a decision based on an administrative record that exceeded 1,000 pages." Doc. 20 at 9.

The Eleventh Circuit has found no error under similar circumstances. *See Bailey v. Soc. Sec. Admin., Comm'r*, No. 22-11531, 2023 WL 4553880, at *3 (11th Cir. July 17, 2023) ("Regarding the source statements from Dr. Khusro and Dr. Nichols, these opinions were also unlikely to change the outcome of the decision because they were not supported by and/or consistent with the medical evidence. … Both statements were one-page forms that did not provide substantive explanation or evidence as to the limitations described. Dr. Khusro opined that she would expect Bailey to be off-task 50% or more of an 8-hour day and that, in a 30-day period, she would expect Bailey to miss work 15 days or more. Dr. Nichols opined that she would expect Bailey to be off-task 40 to 50% in an 8-hour day and that, in a 30-day period, and she would expect Bailey to miss work 10 to 15 days or more. Neither provided any explanation as to the extreme limitations described—other than broadly describing Bailey as having a longstanding history of mental illness. Moreover, neither attempted to reconcile their opinions with other record evidence showing periods where Bailey was reporting reduced symptoms or no symptoms at all and with Bailey's unchanged treatment plan for the relevant period. And … the Appeals Council was not required to defer or give any specific weight to Dr. Khusro's

opinion because she was a treating physician or Dr. Nichols's opinion because she was a doctor. …As such, the source statements were unlikely to change the outcome of the ALJ's decision, and the [Appeals Council] was not required to consider them."); *Weddington v. Soc. Sec. Admin., Comm'r*, No. 21-14096, 2022 WL 2915694, at *2–3 (11th Cir. July 25, 2022) (upholding Appeals Council's no-reasonable-probability determination because the additional evidence—two forms by a doctor—consisted "almost entirely of unexplained and unjustified responses to prewritten questions" and were cumulative of other evidence considered by the ALJ); *Goble v. Soc. Sec. Admin., Comm'r*, No. 22-10842, 2023 WL 2823401, at *8–9 (11th Cir. Apr. 7, 2023) (upholding Appeals Council's no-reasonable-probability determination because the additional evidence— medical opinions of two doctors—"were not supported by or consistent with the other medical evidence," calling "into question the supportability and consistency of [the] additional evidence").

Hernandez's arguments are unavailing, including because she bases her arguments on the inapplicable reasonable "**possibility**" standard. *See generally* Doc. 19 at 7–9 (emphasis added). Even if "**possibility**" is replaced with "**probability**" in her brief, she fails to show a reasonable probability that Dr. Kohen's responses would change the outcome of the decision. That Dr. Kohen treated Hernandez since approximately six months before the alleged onset date and documented some abnormal musculoskeletal findings does not make reasonably probable a different outcome. And although Hernandez correctly observes that had the ALJ posed a hypothetical with the limitations from Dr. Kohen's responses, the vocational expert would have opined all jobs in the national economy would be eliminated, Doc. 19 at 8, that fact does not show a reasonable probability the ALJ would have found Dr. Kohen's responses

persuasive and supportable and incorporated the limitations in the responses into the RFC.

## Conclusion

Because Hernandez fails to show the Appeals Council failed to apply the correct legal standards with respect to Dr. Kohen's responses, the undersigned recommends **affirming** the Acting Commissioner's decision and **directing** the clerk to enter judgment against Janel Hernandez and for the Acting Commissioner of Social Security and close the file.

## Deadlines to Object and Respond to Objections

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections[.]" Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections alters the scope of review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on December 12, 2023.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    The Honorable Roy B. Dalton
      Counsel of record